**MANUFACTURERS HANOVER TRUST CO. et al., Plaintiffs,**

Providence & Worcester Railroad Co., Intervening Plaintiff,

v.

UNITED STATES of America and Interstate Commerce Commission, Defendants,

Penn Central Co., Intervening Defendant.

No. 68 Civ. 5200.

United States District Court
S. D. New York.

April 28, 1969.

Harold I. Meyerson (Hale, Grant, Meyerson, O'Brien & McCormick, New York City), for Providence and Worcester Railroad Co.

Richard W. McLaren and William D. Ruckelshaus, Asst. Attys. Gen., Robert M. Morgenthau and Jon O. Newman, U. S. Attys., Paul A. Sweeney and John H. D. Wigger, Washington, D. C., for the United States.

Robert W. Ginnane, Leonard S. Goodman, Fritz R. Kahn and Jerome E. Sharfman, Washington, D. C., for the Interstate Commerce Commission.

Ulrich Schweitzer, and Debevoise, Plimpton, Lyons & Gates (Francis T. P. Plimpton, Roswell B. Perkins, Robert L. King, Harvey J. Goldschmid, and William G. Bardell, New York City), for Penn Central Co.

Before FRIENDLY, Circuit Judge, and WEINFIELD and LEVET, District Judges.

FRIENDLY, Circuit Judge:

These consolidated actions raise a host of difficult and important questions concerning the Fourth Supplemental Report of the Interstate Commerce Commission in the Penn Central merger case, 334 I.C.C. 25 (1968). This report, like its two predecessors, deals with the inclusion of the New Haven (NH). We deal in this opinion only with a small and discrete segment relating to intervening plaintiff Providence & Worcester R. R. Co. (P & W), which we have singled out for advance disposition because the Commission's report and order allow Penn Central (PC) to terminate the lease of P & W unless by June 30, 1969 that company takes certain action to which it objects.

The main line of P & W extends, as its name implies, from Providence, R. I., where it joins with what were the lines of NH and the Boston & Providence, to Worcester, Mass., where it connects with the former Boston & Albany. Currently it is only a freight line. On July 1, 1892, P & W leased all its property to NH for 99 years. NH was to pay an annual dividend of $2.50 per share on P & W's stock, interest on its bonds, and all taxes. At the time of the Commission's report NH owned 28% of the P & W stock and these shares have now passed to PC. The NH trustees rejected the P & W lease by an amendment to their plan of reorganization, and the Commission's order confirms this rejection.

P & W petitioned the Commission for inclusion in PC as a leased line under the terms and conditions of its lease with NH. The I.C.C. did not pass on this in its earlier reports, but PC does not dispute that the condition with respect to inclusion of NH in the merged company, 327 I.C.C. 475, 526–27 (1966), entitled the Commission now to require inclusion of P & W. In the report here under review, the Commission directed such inclusion as in the public interest, 334 I.C.C. at 89–90, and found that the present lease constituted equitable terms, with two exceptions. One, not here contested, is that, although the lease extends until June 30, 1991, PC may terminate it at an earlier date if the Commission grants permission to abandon under § 1(18) of the Interstate Commerce Act. The other relates to provisions in the Massachusetts and Rhode Island charters of P & W. The company was incorporated in both states, and both charters provided that every stockholder had one vote for each of the first 50 shares he owned but only one vote for every 20 shares after that, and that no single stockholder could have more than a quarter of the voting power. The result would be that PC's 9551 P & W shares, 28% of the total shares, could cast only 485 votes, 3% of the total votes. Sustaining PC's objection to these restrictions, the Commission directed that unless they were eliminated in favor of "a one-share one-vote provision" by June 30, 1969, PC might terminate the lease on notice to P & W's board of directors and the Commission and P & W would thereafter be operated by PC, without a lease, for P & W's account.

P & W's first objection to this direction was that the legislatures of Massachusetts and Rhode Island must approve any charter amendments, and that it would be impossible to obtain the necessary legislation in the time allowed. However, as P & W now recognizes, any difficulty on this score has been overcome by the Commission's granting P & W's request to merge, on a share for share basis, with the Providence & Worcester Co., a Delaware corporation, F.D. No. 25357, served February 18, 1969. Although the certificate of incor-

poration of the Delaware company preserves the voting restrictions of the Massachusetts and Rhode Island charters, these can be altered through amendment by a majority vote of stockholders without any need for legislation.

■ P & W's other objections, that the Commission lacked power to impose the condition since this was unrelated to transportation and that the Commission's action was unwarranted, are best considered together. The I.C.C. took note of PC's position that the voting provisions would prevent PC's including P & W's operations in a consolidated tax return unless it were able to acquire 100% of the stock and would enable a relatively few stockholders to veto any attempt at simplification of PC's corporate structure by acquiring P & W through merger or purchase. Such considerations are sufficiently related to transportation to come within the Commission's broad power to condition P & W's inclusion "upon equitable terms," § 5(2) (d). While their force is not overpowering, neither was that of P & W's objections, namely, that "one share, one vote" would prejudice the public stockholders if PC presses an abandonment application or diverts traffic in an effort to improve its case for this. PC cannot obtain abandonment by securing the consent of P & W as a corporation. Affected shippers and communities and the public stockholders will be entitled to be heard, and all figures relating to P & W's operations will be subject to expert scrutiny. Also we do not read the Commission's report as preventing provision for cumulative voting. The balancing of these considerations was for the Commission.

■ There is equally little force in P & W's contention that the Commission could not provide that in the event of its refusal to change the voting provisions and consequent termination of the lease, PC should operate the road for the lessor's account. Despite termination of the lease PC would still be bound to operate P & W until granted authority to abandon. Either it or P & W can apply for this, and the I.C.C. can fix the fair rent for

the interim. Thompson v. Texas Mexican Ry., 328 U.S. 134, 144–145, 146–150, 66 S.Ct. 937, 90 L.Ed. 1132 (1946). We perceive no reason why operation for the lessor's account after termination of the lease would be inappropriate; the Commission doubtless drew on the analogy of § 77, c(6) of the Bankruptcy Act.

■ This leaves one other matter. One of PC's objections to P & W's insistence that PC operate under the terms of the lease related to various claims against NH which P & W had asserted thereunder. In overruling this, the I.C.C. said "Such disputes and claims will become the responsibility of Penn Central whether or not it becomes the lessee of P & W." 334 I.C.C. at 89. PC's opening brief in this court complained of this statement if it meant to refer to "pre-inclusion claims" which, PC asserted, were the responsibility of the NH estate. The brief for the United States and the Commission agreed that it would be inequitable to burden PC with in personam claims that had accrued against the NH estate, with the result of preferring P & W over other NH creditors, or with claims against moneys in the hands of the NH trustees representing sales of P & W property. The brief read the quoted language as preserving against PC only such claims of P & W as would be good against a purchaser of the leasehold and thus were PC's "responsibility" at least in the first instance, notably, pre-inclusion claims that various parcels of real property should be conveyed to P & W. Concerning these, the brief suggested that the reorganization court reserve jurisdiction over PC's asserted entitlement to a refund if conveyances were required. The Commission had made a similar statement with respect to the claims to be assumed by PC in its report approving the merger of P & W and the new Delaware company. PC is content with the condition as so interpreted but P & W argues that counsel cannot alter the Commission's order. While the I.C.C.'s method of expression left something to be desired, the construction put upon it by

government counsel accords with good sense and equity whereas P & W's does not, and jibes also with what the Commission itself has later said. No purpose would be served by our remanding to enable the Commission to amend the earlier report to accord with the later one, as we are sure it would.

The complaint of P & W as intervening plaintiff is accordingly dismissed for failure to state a claim on which relief can be granted. There being no just reason for delay, we hereby direct the entry of a final judgment to that effect, F.R.Civ.P. 54(b).